## APRIL TERM, 1855.

---

## GUSTAVUS MELCHERS AND GUSTAVUS C. REINERS *vs.* WARREN GOODALE, Col. Gen. of Customs.

The court held that the duty of 15 per cent. imposed upon Chinese goods, by the Act of 1853, could not be levied upon such goods when imported in a Danish ship, without a violation of the Seventh Article of the Treaty with Denmark.

JUDGE ROBERTSON, in delivering his decision, said:

This is an action brought by the plaintiffs, the firm of Melchers & Co., of Honolulu, to recover from the defendant, the Collector General of Customs, the sum of two thousand one hundred and forty-one 8-100 dollars, with interest, from the 27th day of September last, which sum the plaintiffs aver was an overcharge of ten per cent. made by the defendant, on the duties paid by the plaintiffs at that date, under protest, on certain goods imported by them in the Danish ship "Asa Thor" from Hong Kong. The facts as set forth in the plaintiffs' petition, are admitted to be true by the defendant's counsel, and the case is submitted, on those facts, to the decision of the court.

The counsel for the plaintiffs contends, first, that the duty of 15 per cent. *ad valorem*, imposed upon goods imported from China and the Philippine Islands, (being the produce or manufacture of those countries) under the act passed by the Hawaiian Legislature, in the year 1853, cannot be levied upon such goods, when imported in Danish vessels, without a violation of the treaty made between the Hawaiian Kingdom and the Kingdom of Denmark, on the 19th day of October, 1846, by the seventh article of which, as he contends, no

goods imported in Danish vessels, (liquors excepted) can be subjected to a higher duty than 5 per cent. *ad valorem*, that being the duty payable on the goods of the most favored foreign nation. He claims, further, that the port of Hong Kong, where the goods in question were purchased and shipped on board of the "Asa Thor," for Honolulu, is not a "port in China," but a British possession, and therefore not within the scope of the statute referred to.

The counsel for the defendant contends that there was no intention on the part of his Majesty's Government, in making the treaty with Denmark, to grant to Danish vessels, in our ports, any higher privileges than were or are enjoyed by the vessels of other foreign nations, having treaties with this kingdom, and that upon a just construction of the Danish, British and French treaties, the Hawaiian Legislature had a perfect right to impose any amount of duties they might deem proper, on goods imported in the vessels of those nations, from countries with which we have no treaties. On the second point he argues that if the Legislature, in passing the Act of 1853, meant to include within its purview the empire of China, speaking geographically, and not merely politically, then Hong Kong is "a port in China," and it is universally known and spoken of in the language of commerce as a port in China.

This is a case of considerable importance, as there are other parties similarly situated with the plaintiffs, and who, perhaps, look forward to the judgment of the court in the present case, for guidance as to their claims founded upon a similar state of facts. We have therefore bestowed upon the case before us deep thought and careful deliberation.

The case, as presented by the learned counsel, is made to turn, first, upon the proper construction of the treaty with Denmark, and to that point we will first direct our attention. In the language of Chief Justice Eyre, courts of law, although not the expounders of a treaty, yet when it is brought under their consideration *incidentally*, they must say how the treaty is to be understood between the parties to the action, and in doing which, they have but one rule to govern themselves by. We are to construe this treaty as we would construe any other instrument, public or private; we are to collect from the nature of the subject, from the words and the context, the true intent and meaning of the contracting parties, whether they are A and B, or happen to be two independent states. Marryat *vs.* Wilson, 1 Bos. & Pul., p. 438.

The article of the Danish treaty, upon the construction of which the plaintiffs' right to recover depends, in the first instance, reads as follows, viz : "Article 7. No Danish productions, or other goods on board of, or imported in Danish ships, that can be imported by other foreign ships, shall be prohibited, nor pay more than those duties levied on goods of the most favored nation. Any alteration in the duties levied on goods, shall not take effect nor be enforced, until twelve calendar months after the first public notification of such change."

After the most careful study of the treaty, as a whole, we feel inclined to say that the article just quoted does not depend, for its construction or interpretation, upon any other part of the instrument, but is, within itself, complete and perfectly intelligible. The object and

intent of the high contracting parties, it seems to us, is perfectly clear, and was simply this : The representative of the King of Denmark, secured for the vessels of his country the right to import into this kingdom goods of all kinds, whether the produce of Denmark or not, that could be imported in the vessels of other foreign nations, without stipulating for any specific limit as to the rate of duties which the Hawaiian Government might impose upon such goods; and the representative of his Majesty agreed, on his part, that such goods should not be prohibited, nor subjected to the payment of any higher duties, when imported in Danish vessels, than those duties levied on the goods of the most favored nation. Or it may be expounded thus : The article contains three propositions, first, Danish ships shall not be prohibited from importing into this kingdom any kind of goods that can be imported in the vessels of any other foreign nation ; second, goods imported in Danish ships shall not be subject to any higher duties than are levied on the goods of the most favored nation; third, twelve months previous notice shall be given of any alteration in the scale of duties.

The treaty with Denmark was thus the first to free the Hawaiian Government from all restriction as to the enactment of a discriminating tariff on foreign imports, setting a generous example to the more powerful maritime states with which his Majesty, at that time, had treaties of commerce, and evidently contemplating in its terms the arrival of a period in Hawaiian history when the limitation of duties on foreign goods to five per cent. would cease to exist.

It is contended, on the part of the defendant, that the British and French treaties of 1846 left the Hawaiian Government at liberty to impose a higher duty than five per cent. upon goods coming from countries with whom we had no treaty engagements, even where such goods were imported in British or French bottoms, and that there was no intention on the part of either of the high contracting parties, in framing the Danish treaty, to circumscribe the freedom of the Hawaiian Government in this respect. And it is argued that by giving due weight to the word *can*, in the seventh article of that treaty, it will appear that the privileges granted to the vessels of Denmark are to be measured precisely by those enjoyed, at that time, by the vessels of Great Britain and France. We are unable to attach any extraordinary weight to the word *can*, in the connection in which it here occurs, and we are far from thinking that it can by any means be made to bear a construction calculated to change or control the plain and obvious sense of the context. We cannot perceive that it governs, in any degree, the last part of the sentence in which it occurs, relating to duties.

We are not called upon, at present, to adjudicate upon the meaning of the British and French treaties, but only upon that with Denmark, and we do not feel at liberty to seek for the intentions of the parties to the latter, amid the terms and stipulations of the former ; nor would we feel warranted in endeavoring to derive those intentions from any extraneous source whatever, where the language used by the parties is so clear and intelligible. Were there any obscurity or ambiguity apparent to us in the 7th article of the Danish treaty, we would then feel it our duty to endeavor to interpret the same, by the rules usually put in requisition in such cases. That great writer on

international law, Vattel, says, at page 244, of his celebrated treatise: "The first general maxim of interpretation is, that it is not allowable to interpret what has no need of interpretation. When a deed is worded in clear and precise terms—when its meaning is evident, and leads to no absurd conclusion there can be no reason for refusing to admit the meaning which such deed naturally presents. To go elsewhere in search of conjectures, in order to restrict or extend it, is but an attempt to elude it."

Again, he says at page 245, "If he who could and ought to have explained himself, clearly and fully, has not done it, it is the worse for him; he cannot be allowed to introduce subsequent restrictions which he has not expressed. The equity of this rule is glaringly obvious, and its necessity is not less evident."

We have endeavored to collect the intentions of the contracting parties, from a careful consideration of the instrument, and if either of them understood its terms while framing it, in a different sense from that which we have arrived at, they have certainly not used the language they might and ought to have used, in order to make plain their real intentions.

We are of opinion that the duty of fifteen per cent. imposed on goods imported from China, by the act of 1853, cannot be levied on such goods when imported under the Danish flag, and that, therefore, the plaintiffs are entitled to recover back the ten per cent. overpaid by them to the Collector General, on the goods by the "Asa Thor." It thus becomes unnecessary for the court to consider the second point made by the learned counsel for the plaintiffs.

Let judgment be entered in favor of the plaintiffs, for the sum of $2141 08, together with interest on the same from the 27th of September, 1854, up to this date.

Mr. Montgomery, for plaintiffs.
Mr. Bates, for defendant.

NOTE.—Defendant appealed from the decision of JUDGE ROBERTSON to the full court, and upon a re-hearing of the case, and the production of the Danish text of the Treaty, which differs in its wording from the English version, the court reversed the above judgment, at the April Term, 1856.